**LAW OFFICE OF RACHEL S. BLUMENFELD PLLC**
26 Court Street, Suite 2220
Brooklyn, New York 11242
Telephone: (718) 858-9600
RACHEL BLUMENFELD

*Proposed Counsel to the Debtors*
*And Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SHOWFIELDS, INC., *et al.*, | Case No.: 1-23-43643 (JMM) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION**
**CLAIMS OF CERTAIN CRITICAL VENDORS AND 503(B)(9) CLAIMANTS,**
**(II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY**
**TO ALL UNDISPUTED OBLIGATIONS ON ACCOUNT**
**OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Showfields, Inc. ("**Showfields**"), and Showfields NY2, LLC ("**ShowfieldsNY**"), and

(collectively the "**Debtors**"), Debtors and debtors-in-possession in the above-captioned cases

(the "Chapter 11 Cases"), hereby moves (this "Motion") for entry of interim and final orders,

substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim

Order" and "Final Order"): (i) authorizing, but not directing, the Debtors to pay, in the ordinary

course of business, prepetition amounts owing on account of: (a) critical vendor claims[1] (the

"Critical Vendor Claims"), in an amount not to exceed $150,000.00; and (b) claims of 503(b)(9)

claimants (the "503(b)(9) Claims" the "Vendors"); and (ii) granting related relief. In addition,

---

[1] A "claim" means any claim as defined in section 101(5) of the Bankruptcy Code.

the Debtors request that the Court (as defined herein) schedule a final hearing in approximately twenty one (21) days after the commencement of these Chapter 11 Cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis. The Debtors do not seek to accelerate payment of amounts that would not otherwise come due in the interim period.

## Jurisdiction and Venue

1.  The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue of these Chapter 11 Cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.  The legal predicates for the relief requested herein are sections 105(a), 363, 503, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

4.     On October 6, 2023, Showfields Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code; and on October 11, 2023, Showfields NY 2 LLC filed a petition for relief under Chapter 11 of the Bankruptcy Code  (collectively the "**Petition Date**"), (collectively, the "**Chapter 11 Cases**").  The Debtors are each a "small business debtor," as that term is defined by section 101(51D) of the Bankruptcy Code, and have elected to proceed under Subchapter V of Chapter 11 thereof.

5.     The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As the Debtors are proceeding under Subchapter V of Chapter 11 of the Bankruptcy Code, no official committee of unsecured creditors shall be appointed unless by order of this Court.

6.     The factual background regarding the Debtors, including their business operations, their corporate structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the *Declaration of Tal Nathanel Pursuant to Local Bankruptcy Rule 1007-4 and in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, filed with the Court in the Showfields Inc., case on October 6, 2023 (the "First-Day Declaration"),[2] which is incorporated herein by reference.  *See* ECF Doc. No. 5.

7.     The Debtors have filed an application to retain the Law Office of Rachel S. Blumenfeld PLLC as their bankruptcy counsel.  The Debtors may seek to retain other professionals to assist it in these Chapter 11 Cases as and if the need arises (collectively, the "Debtors' Professionals").

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

# I. __Critical Vendor Claims__.

## a. __Explanation of Critical Vendor Claims.__

8.      In the ordinary course of business, the Debtors engage a number of providers for many of the critical administrative and financial services (*i.e.*, software, tax, and other similar services) that are essential to the continued operation of their business.   Of particular importance are Critical Vendors who are irreplaceable due to the specialized and unique services that the provide to the Debtors.   As noted in the First-Day Declaration, Showfields owns and operates/operated multiple stores, that provide(d) local vendors and artists (collectively, the "__Members__") physical space to showcase and sell their goods and products.  Specifically, the Debtors' retail sites offer a physical location to act as a platform for these Members, especially those that are generally relegated to selling products through online "e-commerce."   In addition to Showfields NY 2 LLC and Showfields Inc., Showfields owns and currently operates stores in Washington, D.C., and Los Angeles, California (the "__Non-Debtor Stores__").

9.      The Debtors rely on these Critical Vendors to provide these services, which, in turn, allow the Debtors to operate their business uninterrupted and generate revenue for he benefit of the Debtors' creditors, vendors, landlords, and stakeholders.  Furthermore, and equally as important, if not more so, these Vendors also provide similar services to the Non-Debtor Stores.

10.      The Debtors have identified the Critical Vendors that are vital to their continued operations.   Furthermore, these Critical Vendors are equally as vital to the operation of the Non-Debtor Stores.  The Debtor has a good faith belief that, absent payment of their

Critical Vendors will discontinue services to both the Debtors **_and_** the Non-Debtor Stores.

11.     The Debtors' trade relationships with their Critical Vendors generally are not governed by long-term contracts, and, as noted, the Debtors believe that those relationships will materially deteriorate causing fatal disruption to the operations of not just the Debtors but the Non-Debtor stores as well if the Debtors are unable to pay their Critical Vendor Claims.

12.     Accordingly, the Debtors believe payment of the Critical Vendors' Claims is essential to avoid costly disturbances to the Debtors' business during these Chapter 11 Cases at this critical juncture.

13.     As of the Petition Date, the Debtors believe they owe Critical Vendors  for Showfields, Inc: $107,609.00 which is approximately 16% percent of the Debtors' total outstanding accounts payable; and for Showfields NY 2 LLC $203,829.12, which is approximately 31% percent of the Debtors' total outstanding accounts payable.

**b.     Process for Identifying Critical Vendors.**

14.     Recognizing that payment of all prepetition claims of third-party vendors outside of a chapter 11 plan would be extraordinary relief, the Debtors, with the assistance of their advisors, spent significant time reviewing and analyzing their books and records, consulting operations management and purchasing personnel, reviewing contracts, supply agreements and purchase orders incorporated thereunder, and analyzing applicable laws, regulations, and historical practice to identify the limited number of vendors that are critical to the operation of the Debtors' business—the loss of which could materially

harm their business or reduce its enterprise value—as well as the Non-Debtor Stores. In this process, the Debtors considered a variety of factors, including:

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining services from alternative sources;

- whether a Vendor is a sole-source, limited-source, or high-volume supplier of services critical to the Debtors' business operations;

- whether an agreement exists by which the Debtors could compel a Vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide requisite volumes of similar services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including, pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a Vendor's prepetition claim;

- whether the Debtors' inability to pay all or part of the Vendor's prepetition claim could trigger financial distress for the applicable vendor;

- the likelihood that a temporary break in the Vendor's relationship with the Debtors could be remedied through use of the tools available in these chapter 11 cases;

- whether failure to pay all or part of a particular Vendor's claim could cause the Vendor to hold goods owned by the Debtors, or refuse to ship inventory or to provide critical services on a postpetition basis; and

- whether failure to pay a particular Vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

15.     In addition to these factors, the Debtors and their advisors examined the health of each relationship with the proposed Critical Vendor, the Critical Vendor's familiarity with the chapter 11 process, and the extent to which each Critical Vendor's prepetition claims could be satisfied elsewhere in the chapter 11 process.

## II.   503(b)(9) Claims.

16.    The Debtors may have received goods worth significant amounts from various vendors within the 20-day period immediately preceding the Petition Date (collectively, the "503(b)(9) Claimants"), thereby giving rise to prepetition claims to the 503(b)(9) Claimants (the "503(b)(9) Claims").

17.    Some 503(b)(9) Claimants may also be Critical Vendors. The Debtors' relationship with these Vendors, and with many of the other 503(b)(9) Claimants, generally are not governed by long-term contracts. Rather, the Debtors generally obtain goods from such claimants on an order-by-order basis. As a result, 503(b)(9) Claimants may refuse to supply new orders (to both the Debtors and Non-Debtor Stores) if the Debtors do not pay the 503(b)(9) Claims. Such refusal would significantly impact the Debtors' business operations as well as that of the Non-Debtor Stores.

18.    Accordingly, by this Motion, the Debtors seek authority, but not direction, to pay outstanding prepetition obligations on account of the 503(b)(9) Claims, up to $50,000.00 in the aggregate, but only as such amounts come due in the ordinary course of business or as may be necessary to secure a 503(b)(9) Claimant's agreement to continue business with the Debtors on prepetition terms, and to continue to pay the 503(b)(9) Claims as they come due in the ordinary course of business.

## III.   Customary Critical Vendor Terms.

19.    Subject to the Court's approval, the Debtors intend to pay Critical Vendor Claims only to the extent necessary to preserve their business. The Debtors have designated a core group of executives, advisors, and employees who have experience in the Debtors'

business and in the Debtors' value-preserving process to review, assess, and potentially recommend any payment on account of these claims. In return for paying these claims, the Debtors will use commercially reasonable efforts to condition payment of Critical Vendor Claims, and 503(b)(9) Claims upon each claimant's agreement to continue supplying goods and services to the Debtors in accordance with the terms consistent with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed by the Debtors in their reasonable business judgment (the "<u>Customary Trade Terms</u>") from the Critical Vendors.

20.     In particular, the Debtors will condition the payment of Critical Vendor Claims upon each such party's agreement to continue supplying goods or services on Customary Trade Terms by executing an agreement substantially in the form attached as **<u>Exhibit C</u>** (each, a "<u>Trade Agreement</u>"). Each such Trade Agreement, once agreed to and accepted by a party, shall be a legally binding contractual arrangement between the parties governing the commercial trade relationship as provided herein.

21.     In addition, the Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, as applicable, then: (i) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request; (ii) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (iii) if there exists an outstanding postpetition balance

due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## **Relief Requested**

22.     By this Motion, the Debtors seek entry of the Interim Order and Proposed Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, authorizing, but not directing, the Debtors to pay to the Vendors certain prepetition amounts owing thereto on account of the Critical Vendor Claims.

## **Basis for the Relief Requested**

I.     **The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

23.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing debtor to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (authorizing the payment of prepetition claims to suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

24.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *See also In re Phillips*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *See, e.g., In re CoServ*, 273 B.R. 497.

25.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize preplan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See, e.g., In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow preplan payments of prepetition obligations where such payments are critical to the debtor's reorganization).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of

prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See e.g., In re Ionosphere Clubs*, 98 B.R. at 176.

26.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ*, 273 B.R. at 497.  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id*.  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id*.  The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . " *Id*.

27.     The relief requested herein is appropriate and warranted under the circumstances. The authority to satisfy the Critical Vendor Claims in the initial days of these Chapter 11 Cases without disrupting the Debtors' operations will maintain the integrity of the Debtors' employee base and supply chain, facilitate the Debtors' accounts receivable collection, and allow the Debtors to smoothly transition into and efficiently administer these Chapter 11 Cases.  Failure to pay the Critical Vendor Claims could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates.

28.     The resulting harm to the Debtors' estates far outweighs the costs associated with paying the Debtors' prepetition obligations to the Critical Vendors.  Thus, the Debtors' other creditors will be no worse off, and likely fare better, if the Debtors are empowered

to negotiate such payments to achieve a smooth transition into chapter 11 with minimal disruptions. As such, the Debtors believe the relief sought in this Motion will not burden the Debtors but will help maximize the value of their estates. Accordingly, for the reasons set forth herein, it is appropriate for the Court to authorize the Debtors to satisfy the Critical Vendor Claims.

29. Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district and other jurisdictions have routinely authorized payments to critical vendors, 503(b)(9) claimants, lien claimants, and similar vendors on account of prepetition claims. *See, e.g., In re GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 30, 2021) (authorizing the payment of prepetition trade claims of suppliers, foreign vendors, lien claimants, and other operational partners); *In re Frontier Communications Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 19, 2020) (authorizing the payment of prepetition claims of critical vendors, lien claimants, and section 503(b)(9) claimants on the basis that they could cease to provide specialized goods and services necessary to maintain the smooth operation of the debtors' business otherwise); *In re Barneys New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Sept. 5, 2019) (authorizing the payment of prepetition claims of critical vendors, foreign vendors, lien claimants, and section 503(b)(9) claimants on the basis that they could cease to provide specialized goods and services necessary to maintain the smooth operation of the debtors' business otherwise); *In re Hollander Sleep Products, LLC*, No. 19-11068 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (same); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr.

S.D.N.Y. Apr. 22, 2019) (authorizing the payment of prepetition claims of critical vendors, lien claimants, and section 503(b)(9) claimants on the same basis); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (authorizing the payment of prepetition claims of foreign claimants, lien claimants, 503(b)(9) claimants, and HSE and other claimants on the same basis).[3]

II.     **The Court Should Authorize the Payment of Critical Vendor Claims**.

30.     Allowing the Debtors to pay the Critical Vendor Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999). Indeed, reflecting the recognition that payment of prepetition claims of certain essential suppliers and vendors is, in fact, both critical to a debtor's ability to preserve any value and maximize creditor recovery, courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion.

31.     The Debtors depend on the goods and the provision of services by the Critical Vendors. Ensuring that these Critical Vendors continue to deliver goods and materials and provide services is therefore vital to the ability of the Debtors to maximize the value of their ongoing projects. Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

III. **The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant <u>to Section 503(b)(9) of the Bankruptcy Code</u>.**

32.     Section 503(b)(9) of the Bankruptcy Code provides administrative priority for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). The 503(b)(9) Claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Moreover, the timing of such payments lies squarely within the Court's discretion. *See In re Photo Promotion Assocs., Inc.*, 881 F.2d 6, 8-9 (2d Cir. 1989) ("Foremost, of course, is the broad discretion a bankruptcy judge has in applying . . . 503(b)"); *In re Glob. Home Prods.*, LLC, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court"); 4 Collier on Bankruptcy ¶ 503.16[3] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[P]rior to confirmation bankruptcy courts have discretion to determine when section 503(b)(9) claims should be paid."). The Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates. Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—which merely accelerates the timing of payment

and not the ultimate treatment of such claims—the Debtors could be denied access to the goods necessary to maintain the Debtors' operations and maximize the value of the Debtors' estates.

33. Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation of a chapter 11 plan. As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code. *See, e.g., In re Dana Corp.*, 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006) ("The Bankruptcy Code is designed to allow a debtor-in-possession the flexibility to engage in ordinary transactions without unneeded oversight by creditors or the court, while at the same time giving creditors an opportunity to contest those transactions that are not ordinary. This balance between allowing businesses to continue their daily operations . . . and protecting creditors from squandering the estate's assets . . . is reflected in section 363(c)(1) of the Bankruptcy Code."); *In re James A. Phillips, Inc.*, 29 B.R. 391, 395 n.2 (S.D.N.Y. 1983) ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval."). Again, the timing of such payments lies squarely within the Court's discretion. *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006).

34. For these reasons, courts in this district have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g., In re Frontier Communications Corp.*, No. 20-22476 (RDD) (Bankr.

S.D.N.Y. June 19, 2020) (authorizing the payment of prepetition claims of section 503(b)

(9) claimants on the basis that they could cease to provide specialized goods and services

necessary to maintain the smooth operation of the debtors' business otherwise); *In re*

*Barneys New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Sept. 5, 2019) (same); *In*

*re Hollander Sleep Products, LLC*, No. 19-11068 (MEW) (Bankr. S.D.N.Y. July 2, 2019)

(same); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22,

2019) (same); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374 (MEW) (Bankr.

S.D.N.Y. Dec. 6, 2018) (same).[4]    Accordingly, for the reasons set forth herein, the

Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the

503(b)(9) Claims.

**IV.    The Court Should Confirm that Outstanding Orders Are Administrative Expense <u>Priority Claims and that Payment of Such Claims Is Authorized</u>.**

35.    Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in

connection with the postpetition delivery of goods and services, including goods ordered

prepetition, are administrative expense priority claims because they benefit the estate

postpetition. 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs

and expenses of preserving the estate" are administrative expenses); *see also In re John*

*Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered

prepetition but delivered postpetition *See* are entitled to administrative priority). Thus,

granting the relief sought herein with respect to the Outstanding Orders will not afford

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

such claimants any greater priority than they otherwise would have if the relief requested herein were not granted and will not prejudice any other party in interest.

36.     Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority.   The attendant disruption and delay to the continuous and timely flow of critical materials and other goods to the Debtors would force the Debtors to potentially halt operations, disrupt the Debtors' business, and lead to a loss of revenue, all to the detriment of the Debtors and their creditors.

37.     Indeed, courts in this jurisdiction routinely grant the type of relief requested herein. *See, e.g., In re GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 30, 2021) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority); *In re Jason Industries, Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 27, 2020); (MEW) (Bankr. S.D.N.Y. July 2, 2019) (same); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (same).   Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**V.     <u>Processing of Checks and Electronic Fund Transfers Should Be Authorized</u>**.

38.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business.    In addition, under the Debtors' existing cash

management system, which is described in further detail in a separate motion, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

39.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

40.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule

6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

41.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (i) an admission as to the validity of any particular claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (iii) a promise or requirement to pay any particular claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vii) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Motion Practice

42.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application

to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

**Notice**

43.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (i) the United States Trustee for the Eastern District of New York; (ii) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (iii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

44.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: October 11, 2023
         Brooklyn, New York

                                        **Law Office of Rachel S. Blumenfeld PLLC**

                                        /s/   *Rachel S. Blumenfeld*_____
                                                Rachel S. Blumenfeld (RB-1458)
                                                26 Court Street, Suite 2220
                                                Brooklyn, NY 11242
                                                Tel:  (718) 858-9600

                                                *Proposed Counsel to the Debtor*

*Proposed Attorneys for Debtors and Debtors*
*in Possession*
*Proposed Counsel to the Debtors*
*And Debtors in Possession*