**SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION**

**LOAN AGREEMENT**

By and Between

**SHOWFIELDS INC.**

**SHOWFIELDS NY 2 LLC**

**as Borrowers**

**and**

**SHOWFIELDS DC 1 LLC**

**as Guarantor**

**and**

**SHOWFIELDS INVESTMENT LLC**

**as Lender**

Dated:  November __, 2023

_____

## SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION
## LOAN AGREEMENT

**THIS SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AGREEMENT** (the **"Agreement"**) is made effective as of November __, 2023 between **SHOWFIELDS INC.**, a Delaware corporation, as debtor and debtor-in-possession under the Bankruptcy Code ("**Showfields**") and **SHOWFIELDS NY 2 LLC**, a New York limited liability company, a debtor and debtor-in-possession ("**SNY2 LLC**" and together with Showfields, collectively, the "**Borrowers**") and **SHOWFIELDS DC 1 LLC**, a District of Columbia limited liability company ("**SDC1**") and **SHOWFIELDS INVESTMENT LLC**, a Delaware limited liability company ("**Lender**").

## BACKGROUND

**A.**      Borrowers, SDC1 and Lender are parties to that certain Amended, Restated and Consolidated Loan Agreement (the "**Pre-Petition Loan Agreement**") which memorializes a loan extended to Borrowers and SDC1 in an amount up to $2,500,000.00 (the "**Pre-Petition Loan**").

**B.**      The Pre-Petition Loan is secured by a security interest in certain existing and after acquired assets of the Borrowers and SDC1.

**C.**      Showfields and SNY2 LLC each commenced a voluntary chapter 11 case on October 6, 2023 and October 11, 2023, respectively, as administratively consolidated (the "**Chapter 11 Cases**") with the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**")

**D.**      Each Borrower continues to operate its business and manage its affairs as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**E.**      Subject to entry of an order by the Bankruptcy Court that approves this Agreement, the Borrowers have requested, and, upon the terms and conditions set forth in this Agreement, the Lender has agreed to provide a post-petition loan (the "**Post-Petition Loan**"), to provide the Borrowers with funds to assist each Borrower in meeting its working capital requirements and other expenses set forth in the Budget, to the extent that cash assets of the Borrowers are insufficient to pay such expenses during the pendency of the Chapter 11 cases and prior to an Event of Default.

**F.**      The Borrowers have agreed to secure all of the Obligations under this Agreement by granting to Lender a security interest in and lien upon all of the

2

Borrowers' existing and after-acquired personal and real property with priority to all Liens on such property (the "**Post-Petition Security Interest**").

**G.**     SDC1 has agreed to guarantee the Obligations of the Borrowers and to provide the Lender valid, perfected and enforceable Liens as provided for herein.

**H.**     The Borrowers' business is a mutual and collective enterprise and the Borrowers and SDC1 believe that the Post-Petition Loan and Post-Petition Security Interest provided under the Agreement will facilitate the administration of the Chapter 11 Cases.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties to this Agreement, intending to be legally bound, agree as follows:

1.     **Definitions and Construction.**

1.1.     **Definitions**. When used in this Agreement, the following terms shall have the following meanings (such meanings to be applicable equally both to the singular and plural terms defined):

(a)     "**Affiliate**" means each Person and entity who or which, as to Borrowers, is now or hereafter, directly or indirectly, controlling, controlled by or under common control with, or otherwise an "affiliated company" or an "affiliated person" within the meaning of the Investment Company Act of 1940 (15 U.S.C. § 80a-1, et seq.).

(b)     "**Applicable Usury Law**" means the usury law applicable pursuant to the State of New York or such other usury law which is applicable if the law chosen by the parties is not applicable.

(c)     "**Avoidance Action**" means any claim or cause of action arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544-545, 547, 548, 549 550, 551, or 553 of the Bankruptcy Code or under any other similar applicable law.

(d)     "**Bankruptcy Code**" means title 11 of the United States Code, as in effect from time to time.

(e)     "**Budget**" shall mean the budget for anticipated expenses agreed to by the Borrowers and the Lender as approved by the Bankruptcy Court, as the same may be modified from time to time with the prior written consent of the Lender.

3

**(f)** "**Business Day**" means any day that is not a Saturday, Sunday or other day on which the Federal Reserve Bank of New York is closed.

**(g)** "**Capital Expenditures**" shall mean payments that are made by Borrowers, as applicable, for the lease, purchase, improvement, construction or use of any property, the value or cost of which under GAAP is required to be capitalized and appears on Borrowers' balance sheet in the category of property, plant or equipment, without regard to the manner in which such payments or the instrument pursuant to which they are made is characterized by Borrowers and shall include, without limitation, payments for the installment purchase of property and payments under capitalized leases.

**(h)** "**Cash Equivalents**" shall mean Borrowers' (i) cash on hand or in any bank or trust company, and checks on hand and in transit, (ii) monies on deposit in any money market account, and (iii) treasury bills, certificates of deposit, commercial paper and readily marketable securities at current market value.

**(i)** "**Cash Flow**" shall mean for a period, the Net Income (or loss) of Borrower determined in accordance with GAAP (excluding the effect of any extraordinary gains or losses from sales of property not in the ordinary course of business), plus each of the following items to the extent deducted from revenues of Borrower in calculating Net Income: (i) depreciation; (ii) amortization; and (iii) other noncash expenses during such period.

**(j)** "**Closing**" means the closing of the transactions contemplated under this Agreement.

**(k)** "**Closing Date**" means the first date, which shall be no later than five (5) Business Days after the entry of the Financing Order, upon which all the conditions precedent specified in section 4 are satisfied or waived in writing by Lender

**(l)** "**Collateral**" shall mean all assets, interests, and property of the Borrowers, whether currently owned or hereafter acquired, whether real or personal, tangible or intangible, wherever located, including all proceeds products, rents and profits thereof, including but not limited to any shares of stock, membership interests or other equity interests held by any Borrower in any other Person.

**(m)** "**Event of Default**" has the meaning set forth in section 6.

**(n)** "**Financing Order**" shall mean the order of the Bankruptcy Court entered in the Chapter 11 cases under Bankruptcy Rule 4001(c)(2) or such

4

other procedures as are approved by the Bankruptcy Court, which order shall be satisfactory in form and substance to the Lender, and from which, among other matters but not by way of limitation, authorizes the Borrowers to obtain credit, incur (or guaranty) Obligations, and grant Liens to the Lender under this Agreement, and provides for the super-priority status of the claims of the Lender.

(o)      "**Fully Diluted Basis**" shall mean, Showfields Inc.'s outstanding shares of capital stock or membership interests on a fully diluted as-converted basis, including all shares (whether shares of common stock, preferred stock, or otherwise) which are issued as of the date of applicable calculation, as well as all shares issuable assuming the exercise, conversion or exchange into shares of all warrants, options, notes, debentures, or other rights, securities, agreements or other commitments which by their terms are exchangeable, exercisable or convertible, for or into shares of capital stock of Showfields Inc., as of the time of the applicable calculation, including shares issuable for conversion of the Pre-Petition Loan Amount and Post-Petition Loan (excluding any portion that is being repaid and not converted, if any) and all shares reserved for issuance to Showfields Inc.'s employees, consultants, service providers and directors under Showfields Inc's equity option/incentive plans.

(p)      "**GAAP**" means generally accepted accounting principles in the United States, consistently applied and maintained.

(q)      "**Lien**" shall mean any mortgage, pledge, hypothecation, collateral assignment, deposit arrangement, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to real property, and any financing lease having substantially the same economic effect as any of the foregoing).

(r)      "**Maturity Date**" means the earliest of:

(i)      December 31, 2026,

(ii)      without Lender's prior written consent, the date of the entry of an order by the Bankruptcy Court confirming a plan of reorganization, compromise or arrangement in any or all of the Chapter 11 Cases,

(iii)      the date of the sale of all or a substantial part of the business any Borrower or all or substantially all of the assets of any Borrower,

5

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

(iv)    without Lender's prior written consent, the date Persons holding Showfields Inc.'s outstanding shares of capital stock as of the Closing Date effectuate a sale or other transfer of shares of stock in Showfields Inc. that, cumulatively with all other sales or other transfers of shares of stock in Showfields Inc. on or after the Closing Date, causes more than fifty percent (50%) of the outstanding shares of stock in Showfields Inc. to have been sold or transferred after the Closing Date,

(v)    without Lender's prior written consent, the date of filing or express written support by the Borrowers of bidding procedures, sale processes or transactions, plans of liquidation or reorganization or related disclosure statements or supplemental materials that are not in accordance with this Agreement and that are not otherwise satisfactory to Lender,

(vi)    the date the Borrowers file a motion seeking to convert any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code,

(vii)    the date of conversion of any Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code,

(viii)    the appointment or election of a trustee under Chapter 11 of the Bankruptcy Code, or any examiner or responsible officer with enlarged powers relating to the operation of the Borrowers' business under section 1106 of the Bankruptcy Code,

(ix)    the date any Borrower files a motion seeking a termination or dismissal of any Chapter 11 Case, or

(x)    the date of dismissal of any Chapter 11 Case.

(s)    "**Obligation**" means the repayment of the Post-Petition Loan and all other obligations, liabilities and indebtedness of every kind, nature and description owing by a Borrower to the Lender, including principal, interest, charges, indemnities, reimbursement and indemnification obligations, fees, costs and expenses, however, evidenced, whether as principal, surety, endorser, guarantor or otherwise, arising under this Agreement, whether now existing or hereafter arising, whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, or secured or unsecured.

(t)    "**Person**" means an individual, a corporation or a government or any agency or subdivision thereof, or any other entity.

6

     **(u)**    "**Prior Advances**" means all advances made to Borrowers under the Pre-Petition Loan Agreement.

     **(v)**    "**Tax Code**" shall mean the Internal Revenue Code of 1986, as amended.

     **1.2.**    **Construction**.   Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, the term "including" is not limiting, and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. Section, subsection, clause, schedule, and exhibit references are to sections, subsections, clauses, schedules and exhibits in this Agreement unless otherwise specified.

     **1.3.**    **Schedules and Exhibits**. All of the schedules and exhibits attached to this Agreement, as they may from time to time be amended or restated, shall be deemed incorporated herein by reference.

     **1.4.**    **Accounting Principles**. Where the character or amount of any asset or liability or item of income or expense is required to be determined or any consolidation or other accounting computation is required to be made for the purposes of this Agreement, the same shall be determined or made in accordance with GAAP consistently applied at the time in effect, to the extent applicable, except where such principles are inconsistent with the requirements of this Agreement.

     **1.5.**    **Confirmation of Pre-Petition Loan**.   The parties to this Agreement confirm and acknowledge that as of the date of this Agreement (i) the principal balance outstanding under the Pre-Petition Loan Agreement is $1,612,236.22 (the "**Pre-Petition Loan Amount**"), which consists of $1,473,781.00 secured by the assets of Borrowers and SDC1 and an additional $138,455.22 secured by the assets of SDC1 only.  Borrowers and SDC1 further agree that such sums are validly and duly owing to Lender, without defense, set-off, counterclaim or challenge.  The indebtedness previously evidenced by the Pre-Petition Loan Agreement remains outstanding.  Such indebtedness and all other obligations shall be secured by all collateral previously assigned pursuant to the Pre-Petition Loan Agreement.  Nothing herein shall be deemed a payment of such Pre-Petition Loan and is not intended as a novation thereof.

     **1.6.**    **Other Documents**.   Borrowers hereby confirm and acknowledge that the statements contained in the Background are accurate and

that all security interests, assignments and endorsements of Collateral, are valid, binding and in full force and effect as of the date hereof.  Borrowers further acknowledge and agree that they have no defenses, set-offs, counterclaims or challenges against the payment of any sums owing under the Pre-Petition Loan Agreement, the enforcement of any terms thereof or the validity of the terms thereof.  Borrowers agree that this Agreement is in no way intended to constitute a novation to or of any existing liens or security interests.  The UCC-1 financing statements filed in connection with the Pre-Petition Loan Agreement shall remain valid and effective and shall continue to secure all obligations of the Borrowers under the Pre-Petition Loan Agreements.

**2.**    **The Post-Petition Loan**.

**2.1.**    **Loan**. Subject to the other provisions and conditions of this Agreement, Lender agrees, from time to time following the Closing, to make advances (the "**Advances**") to the Borrowers until the Maturity Date, provided, that, after giving effect to any such Advance, the aggregate principal amount of the Advances, Prior Advances and the Pre-Petition Loan Amount may not exceed Two Million Five Hundred Thousand Dollars ($2,500,000) (the "**Maximum Loan Amount**").

**2.2.**    **Advances**.

**(a)**    **Revolving Credit**.    The Advances to be made hereunder are part of a revolving credit facility.  To the extent repaid, amounts advanced by Lender to Borrowers may be borrowed again, subject to the restrictions set forth herein.  Although the aggregate amount of all Advances made hereunder may exceed the Maximum Loan Amount, the outstanding principal balance of such Advances, Prior Advances and the Pre-Petition Loan Amount may at no time exceed the Maximum Loan Amount.

**(b)**    **Legal Lending Limits**.    In the event that any Advance would cause Lender or any participant to be in violation of any legal lending limits, Borrowers shall immediately upon demand pay down the balance of this Post-Petition Loan, as applicable, by such amount as may be necessary to cure such violation.  Neither Lender nor any participant shall be obligated to make any Advance to Borrowers in excess of its legal lending limit.

**(c)**    **Requests for Advances**.    To request an Advance, Borrowers shall notify Lender of such request in writing (delivered by e-mail) substantially in the form attached hereto as Exhibit A or such other writings approved by Lender and, in each case, signed by a Borrower.

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

**(d)** **Method of Funding**.  All Advances pursuant to this Agreement shall be made by the wire transfer of immediately available funds in accordance with Borrowers' written wiring instructions or otherwise in accordance with procedures acceptable to Lender.  In connection with any such wire transfer, Borrowers will pay Lender's costs and expenses for such wire transfers.  The funding of Advances shall be in accordance with such procedures as Lender may require, including without limitation, disbursement through an escrow agent acceptable to Lender.

## 2.3.   **Interest Rate**.

**(a)** **Non-Default Interest Rate**.   Until the occurrence of an Event of Default, interest shall accrue and be payable on the unpaid principal balance of the Post-Petition Loan at the rate (the "**Non-Default Interest Rate**") of fifteen percent (15%) per annum which shall not be payable in the event of conversion of the principal amount of Post-Petition Loan under this Agreement as set forth in Section 2.6.

**(b)** **Default Interest Rate**.   From and after the occurrence of an Event of Default, interest shall accrue and be payable on the unpaid principal balance of the Post-Petition Loan at a rate (the "**Overdue Rate**") which is three (3) percentage points (3%) higher than the Non-Default Interest Rate.  Any judgment obtained for sums due hereunder will accrue interest at the Overdue Rate until paid.

**(c)** **Calculation of Interest**.  Interest will be calculated on the basis of a year of three hundred sixty-five (365) days and charged upon the actual number of days elapsed.

**(d)** **Limitation of Interest to Maximum Lawful Rate**. Lender and Borrowers intend to comply at all times with Applicable Usury Laws. In no event will the rate of interest payable hereunder exceed the maximum rate of interest permitted to be charged by Applicable Usury Law (including the applicable choice of law rules) and any interest paid in excess of the permitted rate will be refunded to Borrowers.  Such refund may be made by application of the excessive amount of interest paid against any outstanding obligations, applied in such order as Lender may determine.  If the excessive amount of interest paid exceeds the outstanding obligations, the portion exceeding the outstanding obligations will be refunded by Lender.  Any such crediting or refunding will not cure or waive any Event of Default.  Borrowers agree that in determining whether or not any interest payable hereunder exceeds the highest rate permitted by Applicable Usury Law, any non-principal payment, including, without limitation,

prepayment fees and late charges, will be deemed to the extent permitted by law to be an expense, fee, premium or penalty rather than interest.

2.4. **Late Charge**.    In the event that any payment required under this Agreement is not received by Lender within ten (10) days after the due date, Borrowers shall pay a late charge of five percent (5%) of the total amount of such payment to defray the expenses incident to handling such delinquent payment.    Borrowers hereby acknowledge and agree that such late charges are reasonable in light of the anticipated and the actual harm caused by the late payments; the difficulties of proof of loss, harm and damages; and the inconvenience and non-feasibility of Lender otherwise obtaining an adequate remedy.

2.5. **Closing**.    The Closing under this Agreement shall take place effective as of the Closing Date at such place as the Lender may require, provided that all conditions for Closing have been completed.

2.6. **Elective Conversion**. At any time following the Closing, the Lender may, but is not required to, elect to convert the then outstanding Post-Petition Loan (or any portion thereof) in such number of fully-paid and non-assessable shares of newly created class of preferred stock of Showfields Inc. ("**New Preferred**"), which shall be senior to the then most senior series of preferred stock existing in Showfields' capitalization immediately prior to such conversion ("**Existing Senior Preferred**"), at a conversion price per share equal to the lower of (i) the original issue price per share of such Existing Senior Preferred (subject to adjustment in the event of any recapitalization occurred with respect to such series of stock); or (ii) price per share calculated by assuming a post-money value of Showfields Inc. of $3,500,000.00, on a Fully Diluted Basis (i.e., the product of dividing $3,500,000.00 by the number of shares on a Fully Diluted Basis immediately following the conversion) (the "**Value Cap**").

3. **Security; Servicing; Payment**.

3.1. **Security**.    The prompt payment, when due, by acceleration or otherwise, of all amounts at any time owing by Borrowers to Lender pursuant to this Agreement, or any documents collateral hereto, including without limitation, all Advances made by Lender to Borrowers pursuant to this Agreement, all interest thereon, all other fees, costs and expenses, all payment and performance obligations and liabilities of the Borrowers to Lender under this Agreement and all documents collateral hereto and thereto, shall be secured by and Borrowers hereby grant to Lender a security interest in all Collateral, including but not limited to:

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

(a)    All of Borrower's present and future right, title and interest in, to and under all personal property, tangible assets, and fixtures, whether now owned by or owing to, or hereafter acquired by or arising in favor of Borrowers, and whether owned or consigned by or to, regardless of where located;

(b)    All of Borrowers' present and future general intangibles and choses-in-action, cause of actions, claims and judgments;

(c)    All of Borrowers' existing and future rights under any insurance policies;

(d)    All collateral in which Borrowers granted a security interest under the Pre-Petition Loan Agreement; and

(e)    All proceeds of the foregoing.

Borrowers and Lender hereby agree that this Agreement shall be deemed to be a security agreement under the Uniform Commercial Codes of the State of New York and Delaware covering the Collateral.  Accordingly, in addition to any other rights and remedies available to the Lender hereunder, Lender shall have all the rights of a secured party under the New York and Delaware Uniform Commercial Codes.  In the event of any conflict between the terms of the New York and Delaware Uniform Commercial Codes, the terms of the New York Uniform Commercial Code shall govern.  Furthermore, Borrowers hereby authorize Lender to sign and file any financing statement at any time in respect to any of the Collateral, without such financing statements being executed by, or on behalf of Borrowers; but, Borrowers will, at any time on request of Lender, execute or cause to be executed, financing statements in favor of Lender describing such Collateral. Borrowers agree to pay all filing fees, including fees for filing continuation statements in connection with such financing statements, and to reimburse Lender for all costs and expenses of any kind incurred in connection therewith.  To facilitate the provisions of this subparagraph, Borrowers hereby appoint Lender as its attorney-in-fact for the purpose of executing said financing statements, which appointment being coupled with an interest is irrevocable.  The herein-described liens, security interests, and assignments shall not be rendered void by the fact that no Obligations exist as of any particular date, but shall continue in full force and effect until all Obligations have been repaid.

### 3.2.    **Payment of Loan**.

(a)    **General**.    Payment of the Obligations shall be deferred until, and payable, in full, upon the Maturity Date.    Prior to the occurrence of an Event of Default, all amounts received by Lender shall be applied by Lender on the date received (or the following day if received after

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

12:00 noon, New York, NY time) (i) <u>first</u> to the payment of any fees, costs, expenses, late charges and indemnification obligations payable by Borrowers under this Agreement, (ii) <u>second</u> to interest accrued on the unpaid principal balance of the Post-Petition Loan through the last day of the calendar month last ended, (iii) <u>third</u> to the principal balance of the Post-Petition Loan, and (iv) <u>fourth</u> to all other unpaid obligations.   Neither the foregoing nor any other provision contained herein shall impair or inhibit the Lender's right to elect to convert the then outstanding Post-Petition Loan (or any portion thereof) to preferred stock of Showfields Inc. as provided under Section 2.6 of this Agreement prior to or on December 31, 2026.

   **(b)** **Pre-Petition Loan Obligations**.  Section 3.2 of the Pre-Petition Loan Agreement is hereby amended to provide that Borrowers' and SDC1's obligation to pay accrued interest under the Pre-Petition Loan Agreement shall commence on the Maturity Date.

   **(c)** **Joint and Several Obligation**.   Each Borrower shall be jointly and severally liable for the repayment, in cash, of the aggregate outstanding amount of the Obligations.

   **(d)** **Avoided Payments**.   In the event that Lender is required to repay or disgorge to any Borrower or any representatives of the Borrowers' estate (as agents, with derivative standing or otherwise) all or any portion of the Pre-Petition Loan or obligations under the Pre-Petition Loan Agreement are rescinded for any reason whatsoever, including, but not limited to, as a result of any Avoidance Action, or any other action, suit, proceeding or claim brought under any other provision of the Bankruptcy Code or other applicable debtor relief law or any applicable state law, or any other similar provisions under any other state or federal statutory or common law (all such amounts being hereafter referred to as the "**Avoided Obligations**"), then, in such event, unless otherwise expressly ordered by the Bankruptcy Court, the Borrowers shall pay to the Lender an amount equal to one hundred percent (100%) of such Avoided Obligation immediately upon request by the Lender.

   **(e)** **Final Payment Date**.   If not sooner paid or converted pursuant to section 2.6 of this Agreement, and except as provided by section 3.2(a) of this Agreement or as otherwise provided by a plan of reorganization, compromise or arrangement in any or all of the Chapter 11 Cases which is confirmed by Order of the Bankruptcy Court, all amounts owing by Borrowers to Lender on account of this Agreement shall be paid on the Maturity Date.

**3.3.    Reinstatement of Obligations**.  Borrowers agree that, to the extent any payment or payments are made on any Obligations hereunder and such payment or payments, or any part thereof, are subsequently invalidated, declared to be fraudulent or preferential, set aside or are required to be repaid to a trustee, receiver, or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or payments, the obligations or part thereof hereunder intended to be satisfied shall be revived and continued in full force and effect as if said payment or payments had not been made.

**(a)    Acceleration**.  In the event Lender exercises its right to accelerate payments under this Agreement following an Event of Default or otherwise, any tender of payment of the amount necessary to repay all or part of the Loan made thereafter at any time by Borrowers, their successors or assigns or by anyone on behalf of Borrowers shall be deemed to be a voluntary prepayment and shall not be deemed a cure of the Event of Default or otherwise affect the acceleration of the Loan, unless Lender provide written notice that the Event of Default has been cured.

**4.    Conditions Precedent to Post-Petition Loan**.  This Agreement shall become effective upon the satisfaction, or waiver, immediately prior to or concurrently therewith of each of the following conditions precedents:

**4.1.    Cash Collateral Order**.  The Cash Collateral Order shall have been entered by the Bankruptcy Court applicable to the Chapter 11 Cases and be in full force and effect and not have been vacated, reversed, stayed and not be subject to a pending appeal or motion or motion for leave to appeal or other proceeding to set aside any such order or the challenge to the relief provided for in it, except as consented to by Lender.

**4.2.    Lien Searches**.  Lender shall have received the results of a recent lien search in the jurisdiction where SDC1 is organized, and such search shall not show any security interests, liens or other encumbrances on any of the assets of SDC1, except for liens on the account receivables of SDC1.

**4.3.    Budget**.  Lender shall have received and approved the Budget.

**4.4.    Closing Date**.  The Closing Date shall have occurred on or before December 15, 2023.

**4.5.    DIP Financing Order**. The Bankruptcy Court shall have entered a Financing Order which shall not have been vacated, reversed, stayed

13

and not be subject to a pending appeal or motion or motion for leave to appeal or other proceeding to set aside any such order or the challenge to the relief provided for in it, except as consented to by Lender, and that provides for:

> **(a)**    The Obligations will at all times constitute allowed super-priority administrative expense claims in the Chapter 11 Cases having priority over all administrative expense claims and unsecured claims against Borrowers now existing or hereafter arising, of any kind whatsoever, including all administrative expense claims of the kind specified in Sections 105, 326, 330, 331, 365, 503(b), 506(c), 507(b), 546(c), 726, 1114 or any other provision of the Bankruptcy Code, and

> **(b)**    The Obligations will be secured by a valid and perfected first priority Lien on all of the Collateral of Borrowers.

5.    **Representations and Warranties**.  As an inducement to Lender to advance funds to Borrowers as herein provided, Borrower makes the following representations and warranties:

5.1.    **Licenses**.    Borrower and their respective employees, servants and agents have and will continue to have all licenses, registrations, approvals and other authority as may be necessary to enable them to own and operate their business, perform all services and business which they have agreed to perform in any state, municipality or other jurisdiction.

5.2.    **Transaction is Legal, Enforceable and Authorized**.  The execution and delivery of this Agreement and the performance by Borrowers and all other parties thereto of their respective obligations hereunder and thereunder (a) are within the powers and purposes of Borrowers and such other Persons and entities, (b) have been duly authorized by all necessary action of Borrowers and such other Persons and entities, and (c) when duly executed on behalf of Borrowers and such other Persons and entities and delivered to Lender, this Agreement will be valid, legal and binding upon the Borrowers and such other Persons and entities, enforceable against Borrowers and such other Persons and entities in accordance with their terms.

5.3.    **Due Authorization; No Legal Restrictions**.    The execution and delivery by Borrowers of this Agreement, the consummation of the transactions contemplated by this Agreement and the fulfillment and compliance with the respective terms, conditions and provisions of this Agreement: (a) have been duly authorized by all requisite corporate action of Borrowers, (b) will not conflict with or result in a breach of, nor constitute a default (or might, upon the passage of time or the giving of notice or both, constitute a default) under, any of

the terms, conditions or provisions of any applicable statute, law, rule, regulation or ordinance or Borrowers' Articles of Incorporation or By-Laws or any indenture, mortgage, loan or credit agreement or instrument to which Borrowers may be bound or affected, or any judgment or order of any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, and (c) will not result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Borrowers under the terms or provisions of any such agreement or instrument, except liens in favor of Lender.

5.4.    **Taxes**.  Borrowers are not in default in the payment of any real or personal property tax or in the filing of any tax return required to be filed under any tax law (federal, state and local) applicable to them, respectively or their respective properties.  All taxes shown by said returns to be payable and all interest and penalties, if any, in respect thereof, have been fully paid.  No taxing authority has questioned or disputed the accuracy or completeness of any such tax return.  No tax audit is pending or threatened with respect to Borrowers.

5.5.    **Consents**.  No consent, approval, order or authorization of, or registration with, any governmental authority, limited partner, trustee, member or any other Person, other than approval by the Bankruptcy Court, is required in connection with the valid execution and delivery of this Agreement by Borrowers or any other party thereto, or the performance by Borrowers or any other party thereto of the transactions contemplated hereby or thereby.

5.6.    **No Violation of Law**.  Borrowers are not in violation of any laws, ordinances, governmental rules or regulations to which it is subject, nor have Borrowers failed to obtain any license, permit, franchise or other governmental authorization necessary to the ownership of its property or to the conduct of its business as the same is presently conducted and as proposed to be conducted.

5.7.    **Current Compliance**.    Borrowers are currently in compliance with all of the terms and conditions of this Agreement.

5.8.    **Foreign Assets Control Regulations, Etc.**    Neither the requesting or borrowing of the Loan or the use of the proceeds of the Loan will violate the USA Patriot Act, the (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the **"USA Patriot Act"**) Trading With the Enemy Act (50 U.S.C. § 1 et seq., as amended) (the "***Trading With the Enemy Act***") or any of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) (the "***Foreign Assets Control Regulations***") or any enabling legislation or executive order relating thereto.

15

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

Furthermore, neither the Borrowers nor any of their subsidiaries or other Affiliates (i) is or will become a "blocked person" as described in the Trading With the Enemy Act or the Foreign Assets Control Regulations, or (ii) engages or will engage in any dealings or transactions, or be otherwise associated, with any such "blocked person."

**5.9.** **Completeness of Representations**.    Neither this Agreement nor any Exhibit or Schedule attached hereto nor any certificate, financial statement, correspondence or other document delivered or furnished to Lender hereunder or in connection with the transactions contemplated hereby contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements contained herein and therein not misleading.

**5.10.** **No Discharge.**  Borrowers agree that prior to the payment in full of the Obligation: (a) Borrowers will not request or otherwise support the discharge of the Obligations under this Agreement, and (b) Borrowers will take all necessary measures to maintain the Liens and super priority claims granted to the Lender pursuant to the Financing Order.

**5.11.** **Waiver of Certain Rights**. Each Borrower agrees that it shall not, and hereby waives any right that it may have to, seek authority to, (a) obtain post-petition loans or other financial accommodations, other than from Lender, that does not provide for the indefeasible payment in full and satisfaction in cash of all Obligations without the prior written consent of Lender, (b) challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of Lender's post-petition Liens and claims, (c) propose or support a plan of reorganization that does not provide for the indefeasible payment in full and satisfaction in cash of all Obligation, (d) seek relief from the Bankruptcy Court that would restrict or impair the rights and remedies of the Lender as set forth in this Agreement, including, without limitation, under section 105 of the Bankruptcy Code, or (e) take any action to amend or modify the rights or remedies of the Lender under this Agreement or the Financing Order, without the prior written consent of Lender.

**5.12.** **Asset Dispositions**.  Each Borrower shall not sell, issue, assign, lease, license, transfer, abandon or otherwise dispose of any equity interests or any of its assets, without the prior written consent of Lender.

16

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

6.      **Default; Remedies**.

**6.1.**      **Events of Default**.  The occurrence of any one or more of the following events shall constitute an "**Event of Default**" hereunder:

(a)      Borrowers shall fail to pay or cause to be paid any amount of principal or interest on the Obligations or any fee or other sums payable hereunder on the date such payment is due, whether on demand, at the stated maturity or due date thereof, by reason of any requirement for prepayment thereof, by acceleration or otherwise.

(b)      Borrowers shall default in the observance or performance of any term, covenant or agreement on its part to be observed or performed (i)  hereunder and not otherwise specifically constituting an Event of Default under this section, or (ii) under any other existing or future agreement between Borrowers and Lender; and such default continues unremedied for a period of twenty (20) days after the earlier to occur of (A) notice from Lender to Borrowers of the existence of such failure, or (B) an executive officer of Borrowers first has actual knowledge of such failure, provided that, in the event that such default is incapable of remedy, was willfully caused or permitted by Borrowers, or materially impairs the value of any Collateral, then Borrowers shall not be entitled to any notice or cure period.

(c)      Any representation or warranty made by or on behalf of Borrowers herein or in any other writing furnished pursuant hereto or any fact relative to the Borrowers' business operations or financial condition shall be or have been false in any material respect.

(d)      Borrowers shall surrender or shall be deprived, for any reason, of the full right, privilege and franchise to carry on its business as presently carried on.

(e)      Borrowers shall (as applicable) dissolve, merge, consolidate or cease its day-to-day business operations, or shall liquidate or commence any proceedings to be liquidated, or shall, without the prior written consent of Lender, dispose of any substantial part of its property or assets in the ordinary course of its business.

(f)      Borrowers shall become insolvent or be unable to pay its debts as they mature or shall admit in writing its inability to pay its debts as they mature.

(g)      Borrowers shall make a general assignment for the benefit of creditors.

17

**(h)**    A writ, warrant, attachment, levy or similar process is issued against any portion of Borrowers' property or the Collateral and such writ, warrant, attachment, levy or similar process remains in full force or effect and unsatisfied within ten (10) days after issuance.

**(i)**    The validity or enforceability of this Agreement is contested by Borrowers or any stockholder or member of Borrowers.

**(j)**    The conversion of any Chapter 11 Case to a Chapter 7 case(s), or any Borrower shall file a motion or other pleading seeking the conversion of any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code in each case, without the prior written consent of Lender.

**(k)**    The dismissal of any Chapter 11 Case, or any Borrower shall file a motion or other pleading seeking the dismissal of any Chapter 11 Case, without the prior written consent of Lender.

**(l)**    Any violation, breach, or default by any Borrower with respect to any of its obligations under any Financing Order.

**(m)**    The appointment or election of a trustee under chapter 11 of the Bankruptcy Code.

**(n)**    The entry of an order in any Chapter 11 Case avoiding or permitting recovery of any portion of the payments made on account of the Obligations.

**(o)**    An order in any Chapter 11 Case shall be entered charging any of the Collateral under Section 506(c) of the Bankruptcy Code.

**6.2.    <u>Remedies</u>**.    At the option of the Lender, upon the occurrence of an Event of Default or at any time thereafter:

**(a)**    All Obligations shall become immediately due and payable without further notice or demand;

**(b)**    Borrowers shall have no further right to receive any Advances hereunder;

**(c)**    Lender may increase the interest rate on the Obligations hereunder to the Overdue Rate specified herein without further notice;

18

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

**(d)**    Lender may exercise each and every right and remedy granted to it under this Agreement, the applicable Uniform Commercial Code and under any other applicable law, at equity or otherwise.

**6.3.    <u>Sale or Other Disposition of Collateral</u>**.  The sale or other disposition of the Collateral, or any part thereof, by Lender after an Event of Default may be for cash, credit or any combination thereof, and Lender may purchase all or any part of the Collateral at public or, if permitted by law, private sale, and in lieu of actual payment of such purchase price, may set-off the amount of such purchase price against the obligations of Borrowers to Lender hereunder. Any sales of the Collateral may be adjourned from time to time with or without notice.  Any notice required to be given by Lender of a sale or other disposition or other intended action by Lender with respect to any of the Collateral which is given in the manner specified in this Agreement, at least five (5) Business Days prior to such proposed action, shall constitute fair and reasonable notice to Borrowers of any such action.  The net proceeds realized by Lender upon any such sale or other disposition, after deduction for the expenses related thereto including without limitation attorneys' fees, shall be applied in such order as Lender, in its sole discretion, elects, toward satisfaction of the Indebtedness. Lender shall account to Borrowers for any surplus realized upon such sale or other disposition, and Borrowers shall remain liable for any deficiency.   The commencement of any action, legal or equitable, or the rendering of any judgment or decree for any deficiency shall not affect Lender's security interest in the Collateral.  Borrowers agree that Lender has no obligation to preserve rights to the Collateral against any other parties.   Lender shall be under no obligation to marshall any assets in favor of Borrowers or any other party or against or in payment of any or all of the Indebtedness.

**6.4.    <u>Delegation of Duties and Rights</u>**.   Lender may execute any of its duties and/or exercise any of its rights or remedies under this Agreement by or through its officers, directors, employees, attorneys, agents or other representatives.

**6.5.    <u>Set-Off</u>**.    Without limiting the rights of Lender under applicable law, Lender has and may exercise a right of set-off, a lien against and a security interest in all property of Borrowers now or at any time in Lender's possession in any capacity whatsoever, including but not limited to any balance of any deposit, trust or agency account, or any other account with Lender, as security for all Obligations.  At any time and from time to time following the occurrence of an Event of Default, or an event which with the giving of notice or passage of time or both would constitute an Event of Default, Lender may without notice or demand, set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time

19

owing by Lender to or for the credit of Borrowers against any or all of the Obligations.

**6.6.    Certain Disclosures**.    Lender may disclose any and all information regarding Borrowers in connection with any regulatory examination of Lender or to the extent Lender deems it advisable to disclose information to such applicable regulatory agencies involving matters relating to the USA Patriot Act, the Trading with the Enemy Act, or the Foreign Assets Control Regulations.

**7.    Guaranty**. SDC1 hereby, unconditionally and irrevocably, agrees and guarantees to the Lender (the "**Guaranty**") as follows:

**7.1.**    The full, complete and prompt payment of all Obligations, and the full and timely performance by the Borrowers of each Borrower's obligations under this Agreement .

**7.2.**    This Guaranty is a continuing, absolute and unconditional guaranty and shall remain in full force and effect until all Obligation have been paid and satisfied in full.  For the purposes of making payments hereunder, SDC1 hereby waives any right to assert any setoff, counterclaim or cross-claim.

**7.3.**    As consideration to the Lender for enter into this Agreement, SDC1 waives notice of the accrual of the Obligations and notice of or proof of reliance by Lender upon this Guaranty or acceptance of this Guaranty. SDC1 waives presentment, protest, demand for payment and notice of default or nonpayment to or upon the Lender with respect to the Obligations.

**7.4.**    SDC1 shall grant to the Lender a perfected lien on and security interest, in all of its assets and properties, whether now or hereafter existing, owned or acquired, all in accordance with the terms of this Agreement. SDC1 shall assist the Lender with nay and all filings necessary or appropriate and reasonably requested by Lender for the perfection for the security interest granted hereunder.

**8.    Miscellaneous**.

**8.1.    Notices**.    No notice, request, demand or instruction to be given hereunder to any party shall be effective for any purpose unless in writing and delivered personally or by overnight courier at the appropriate address set forth below (in which event, such notice shall be deemed effective only upon such delivery) or when delivered by mail, sent by registered or certified mail, return receipt requested, as follows:

If to Lender:            Showfields Investment LLC

|  | c/o White and Williams LLP |
|---|---|
|  | 7 Times Square, Suite 2900 |
|  | New York, NY 10036 |
|  | Attn: Steven Coury, Esq. |
|  | Email: courys@whiteandwilliams.com |
| With a copy to: | Gross & Co. |
|  | 1 Azrieli Center, Round Building |
|  | Tel Aviv 6701101, Israel |
|  | Attn: Shir Shalev |
|  | Email: shirs@gkh-law.com |
| If to Borrower or SDC1 | Showfields Inc. |
|  | Showfields NY 2 LLC |
|  | Showfields DC 1 LLC |
|  | 187 Kent Avenue |
|  | Brooklyn, NY 11249 |
|  | Attn: Tal Nathanel |
|  | Email: tal@showfields.com |
| With a copy to: | Law Office of Rachel S. Blumenfeld PLLC |
|  | 26 Court Street, Suite 2220 |
|  | Brooklyn, New York 11242 |
|  | Attn: Rachel Blumenfeld, Esq. |
|  | Email: rachel@blumenfeldbankrutpcy.com |

Notice shall be deemed to have been given upon the earlier to occur of (a) receipt, or (b) forty-eight (48) hours after the deposit of same in any United States Post Office box, postage prepaid, as set forth above.  The addresses and addressees for the purpose of this section may be changed by giving written notice of such change in the manner herein provided for giving notice.  Unless and until such written notice of a change of address or addressee is received, the last address and addressee, as stated by written notice, or provided herein if no written notice of change has been sent or received, shall be deemed to continue in effect for all purposes hereunder.

      **8.2.**    **Binding Effect; Assignment**.   This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that Borrowers shall not assign their rights or obligations under this Agreement.

      **8.3.**    **No Waiver**.   No delay or omission to exercise any right, power or remedy accruing to Lender upon any breach or default of Borrowers

under this Agreement shall impair any such right, power or remedy of Lender, nor shall it be construed to be a waiver of any such breach or default thereafter occurring, nor shall any waiver of any single breach or default theretofore occurring be deemed a waiver of any other breach or default.  Any waiver, permit, consent or approval of any kind under this Agreement, or any waiver on the part of Lender of any provision or condition of this Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing.

8.4.    **Remedies Cumulative**.    All remedies either under this Agreement, by law, or otherwise afforded to Lender, shall be cumulative and not alternative.

8.5.    **Costs, Fees and Expenses**.

(a)    **Loan Documents**.  Borrowers shall pay:

(i)    all reasonable costs and expenses in connection with (A) the preparation, review, negotiation, execution, delivery and administration of this Agreement, and the other documents to be delivered in connection therewith, or any waivers, consents, amendments, extensions and increases to any of the foregoing, (B) the preparation for, negotiations regarding, consultations concerning, or the defense or prosecution of legal proceedings involving any claims made or threatened against Lender arising out of or related to this Agreement, the transactions contemplated hereunder and the protection of any of the Collateral, or (C) obtaining any appraisals or reappraisals of Collateral, periodic lien searches and tax clearance certificates, as Lender in its discretion may require (including in all cases, without limitation, attorneys' fees and expenses);

(ii)    all reasonable losses, costs and expenses in connection with the interpretation, enforcement, protection and preservation of the Lender's rights or remedies under this Agreement, or any other agreement relating to any Obligations, or in connection with legal advice relating to the rights or responsibilities of Lender (including without limitation court costs, attorneys' fees, expenses of accountants and appraiser and the cost of all appeals); and

(iii)    any and all stamp and other taxes payable or determined to be payable in connection with the execution and delivery of this Agreement, and all liabilities to which Lender may become subject as the result of delay in paying or omission to pay such taxes.

**(b)** **Recording; Etc**.  Borrowers shall pay all costs of recording, all costs of filing financing statements in favor of Lender and continuations thereof, all search company and title company charges, and all other out-of-pocket costs and expenses of Lender related to the transactions contemplated hereunder.

**(c)** **Attorneys' Fees**.  Borrowers shall pay all reasonable attorneys' fees and the costs and disbursements of any attorney or paralegal employed by Lender with respect to preparing, reviewing, negotiating, revising, amending or extending this Agreement or otherwise representing Lender in connection with any matter relating to this Agreement, any of the documents collateral hereto and the transactions contemplated hereunder.

**(d)** **Protection of Security, Etc.**  Borrowers shall pay all costs and expenses, including reasonable attorneys' fees incurred by Lender in protecting, maintaining, preserving or enforcing this Agreement or in defending or prosecuting any action or proceeding arising out of or relating to Lender's transactions with Borrowers, or in exercising any of its rights hereunder, or under applicable law.

**8.6.** **No Other Agreements**.  All understandings and agreements heretofore had between the parties respecting the transactions contemplated by this Agreement are merged in this Agreement and there are no other agreements, written or oral, and no customs or usages applicable to any provision of this Agreement.

**8.7.** **Amendments**.  No change in or addition to, or waiver of, any provision of this Agreement shall be valid unless in writing and signed on behalf of the party against whom such change, addition or waiver is sought to be enforced.

**8.8.** **Survival of Covenants, Agreements, Representations and Warranties**.  All warranties, representations and covenants made by Borrowers herein or in any certificate or other instrument delivered by it or on its behalf under this Agreement, (a) shall be considered to have been relied upon by Lender and shall survive the Closing, regardless of any investigation made by Lender or on its behalf, (b) are material and being relied upon by Lender, and (c) are true in all respects as of the date hereof and shall be true in all respects at all times hereafter.  All statements and any such certificate or other instrument shall constitute warranties and representations by Borrowers hereunder.

**8.9.** **Governing Law.**  THIS AGREEMENT AND ALL TRANSACTIONS CONTEMPLATED HEREUNDER, AND ALL THE

RIGHTS OF THE PARTIES SHALL BE GOVERNED AS TO THE VALIDITY, INTERPRETATION, CONSTRUCTION, ENFORCEMENT AND IN ALL OTHER RESPECTS BY THE LAW OF THE STATE OF NEW YORK, THE PRIMARY PLACE OF BUSINESS OF LENDER, WITHOUT REGARD TO ITS RULES AND PRINCIPLES REGARDING CONFLICTS OF LAWS OR ANY RULE OR CANON OF CONSTRUCTION WHICH INTERPRETS AGREEMENTS AGAINST THE DRAFTSMAN.

**8.10.** **Limitation of Liability**.  Borrowers shall be responsible for and Lender is hereby released from any claim or liability in connection with:

**(a)**      Safekeeping any Collateral;

**(b)**      Any loss or damage to any Collateral;

**(c)**      Any diminution in value of the Collateral; or

**(d)**      Any act or default of another Person.

If Lender maintains the original Agreement delivered to it in safekeeping in a manner consistent with the manner in which Lender maintains such collateral, Lender shall have complied with any required standard of care regarding safekeeping or damage to the Collateral. Lender shall only be liable for any act or omission on its part constituting willful misconduct.  In the event Borrowers bring suit against Lender in connection with the transactions contemplated hereunder and Lender is found not to be liable, Borrowers will indemnify and hold Lender harmless from all costs and expenses, including attorneys' fees, incurred by Lender in connection with such suit.  This Agreement is not intended to obligate Lender to take any action with respect to the Collateral or to incur expenses or perform any obligation or duty of Borrowers.

**8.11.** **Submission to Jurisdiction**.  Borrowers hereby consent to the non-exclusive jurisdiction of any state or federal court located within the State of New York and irrevocably agree that, subject to the Lender's election, all actions or proceedings relating to the Agreement and Pre-Petition Loan Agreement or the transactions contemplated hereunder shall be litigated in such courts, and Borrowers waive any objection which they may have based on lack of personal jurisdiction, improper venue or forum non conveniens to the conduct of any proceeding in any such court and waive personal service of any and all process upon them, and consent that all such service of process be made in accordance with the notice provisions set forth herein.  Nothing contained in this section shall affect the right of Lender to serve legal process in any other manner

24

permitted by law or affect the right of Lender to bring any action or proceeding against Borrowers or their property in the courts of any other jurisdiction.

**8.12.** __Service of Process__. **EACH BORROWER HEREBY WAIVES PERSONAL SERVICE OF ANY SUMMONS AND COMPLAINT IN CONNECTION WITH ANY PROCEEDINGS ARISING OUT OF THIS AGREEMENT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO BORROWER, AS APPLICABLE, AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT PURSUANT TO THIS AGREEMENT. EACH BORROWER WAIVES ANY CLAIM THAT NEW YORK IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. SHOULD BORROWER AFTER BEING SO SERVED, FAIL TO APPEAR OR ANSWER TO ANY SUMMONS, COMPLAINT, PROCESS OR PAPERS SO SERVED WITHIN THE NUMBER OF DAYS PRESCRIBED BY LAW AFTER THE MAILING THEREOF, BORROWER SHALL BE DEEMED IN DEFAULT AND AN ORDER AND/OR JUDGMENT MAY BE ENTERED BY LENDER AGAINST BORROWER AS DEMANDED OR PRAYED FOR IN SUCH SUMMONS, COMPLAINT, PROCESS OR PAPERS.**

**8.13.** __Use of Lender's Name__. Borrowers shall not, without the prior written consent of Lender, use the name of Lender in connection with any of its business activities, except in connection with internal business matters and as required in dealings with governmental agencies and other financial institutions.

**8.14.** __Headings; References to "Exhibits" or to "Sections"__. Section headings have been inserted in this Agreement as a matter of convenience of reference only, and are not a part of this Agreement and shall not be used in the interpretation of this Agreement. References herein to a "Section" or an "Exhibit" without further attribution shall be deemed to refer to sections or exhibits, as the case may be, of or to this Agreement. All Exhibits referred to herein or attached hereto shall be deemed to be incorporated herein for all purposes.

**8.15.** __Severability__. If any one or more of the provisions of this Agreement are held to be invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision or provisions in every other respect and of the remaining provisions of this Agreement shall not be in any way impaired.

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

**8.16.   Waiver in Legal Actions**.   In connection with any proceedings under this Agreement or the documents collateral hereto or the transactions contemplated hereunder, Borrowers irrevocably waive:

**(a)**     All procedural errors, defects and imperfections in such proceedings;

**(b)**     Any requirement of bonds, and any surety or security relating thereto, required by any statute, court rule or otherwise as incident to such possession;

**(c)**     Demand, presentment and protest, notice of demand, presentment or protest of the Agreement;

**(d)**     The benefit of any valuation, appraisal and exemption law; and

**(e)**     Any right to subrogation, reimbursement, contribution or indemnity.

**8.17.   Indemnification**.   Borrowers agree to indemnify Lender and all participants, their successors, assigns, shareholders, officers, directors, employees and agents against any damage, loss or expense (including attorneys' fees and court costs) awarded against or paid, incurred or suffered by Lender as a result of proceedings, actions, claims, counterclaims, fines or penalties arising out of or resulting from (a) any act or omission of Borrowers or any of their respective employees, contractors or agents, (b) any violation of or noncompliance by Borrowers with any legal requirement, (c) the breach by Borrowers of any of the terms and provisions of this Agreement, and (d) any misrepresentation by Borrowers to Lender in respect of any aspect of the transactions contemplated by this Agreement.  In the event Borrowers shall fail to pay taxes, insurance, assessments, costs or expenses which any of them are required to pay hereunder, or otherwise breach any obligation hereunder, Lender in its discretion, may make expenditures for such purposes and the amount so expended (including attorneys' fees and expenses, filing fees and other charges) shall be payable by Borrowers on demand.  With respect to any amount required to be paid by Borrowers under this section, in the event Borrowers fail to pay such amount on demand, Borrowers shall also pay to Lender interest thereon at the Overdue Rate.

Borrowers agree to indemnify and hold harmless, Lender and Lender's officers, directors, shareholders, employees and agents, from and against any and all claims, liabilities, losses, damages, costs and expenses (whether or not such Person is a party to

31879520v.5

any litigation), including attorneys' fees and costs and costs of investigation, document production, attendance at depositions or other discovery with respect to or arising out of this Agreement, the Pre-Petition Loan Agreement, the use of any proceeds advanced hereunder, the transactions contemplated hereunder, or any claim, demand, action or cause of action being asserted against Borrowers.

Borrowers' obligations under this section shall survive termination of this Agreement and repayment of the Obligations.

**8.18.** **Counterparts; Facsimile**.    This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original without the production of any other counterpart.  Any signature delivered by a party by facsimile transmission shall be deemed to be an original signature hereto, provided that the original is promptly delivered by the party.

**8.19.** **No Joint Venture**.  Nothing contained herein is intended to permit or authorize Borrowers to make any contract on behalf of Lender, nor shall this Agreement nor any of the documents collateral hereto be construed as creating a partnership or joint venture with Lender.  Borrowers shall indemnify and hold Lender harmless from any damages and expenses resulting from such a construction or any assertion thereof.  Lender does not hereby assume and shall have no responsibility, obligation or liability to any other Person or entity, Lender's relationship being that only of a creditor who has taken, as security for Indebtedness, the liens and security interests in the Collateral.

**8.20.** **Time of the Essence**.    Time is of the essence in the performance by Borrowers of all their obligations hereunder.

**8.21.** **Joint and Several**.    The obligations of Borrowers hereunder and under all documents collateral hereto shall be joint and several.

**8.22.** **No Third Party Beneficiaries**.  The rights and benefits of this Agreement shall not inure to the benefit of any third party.

**8.23.** **Limitation on Damages**.    Borrowers agree that, in any action, suit or proceeding, in respect of or arising out of this Agreement or the transactions contemplated hereunder, each waives to the fullest extent permitted by law, any claim they may have against Lender for consequential, punitive or special damages.

**8.24.** **Waiver of Right to Trial by Jury**.  **EACH BORROWER AND LENDER WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING**

**HEREUNDER OR UNDER ANY OF THE DOCUMENTS COLLATERAL HERETO, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF BORROWER OR LENDER WITH RESPECT HERETO OR TO ANY OF THE DOCUMENTS COLLATERAL HERETO, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.   EACH BORROWER AND LENDER AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH BORROWER AND LENDER TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.   EACH BORROWER ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS SECTION  THAT THEY FULLY UNDERSTAND ITS TERMS, CONTENT AND EFFECT, AND THAT THEY VOLUNTARILY AND KNOWINGLY AGREE TO THE TERM OF THIS SECTION .**

       8.25.   **USA Patriot Act Notice and Compliance**.   Lender hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the **"USA Patriot Act"**), Lender is required to obtain, verify and record information that identifies Borrowers, which information includes the name and address of Borrowers and other information that will allow Lender to identify Borrowers in accordance with the USA Patriot Act.  Borrowers will comply with all applicable executive orders and mandates issued pursuant to the USA Patriot Act, the Trading with the Enemy Act, the Foreign Assets Control Regulations or the Executive Order.

**[Remainder of Page Intentionally Left Blank]**

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**BORROWER:**

**SHOWFIELDS INC.**
**SHOWFIELDS NY 2 LLC**

By:_____
Name:
Title:

**GUARANTOR:**

**SHOWFIELDS DC 1 LLC**

By:_____
Name:
Title:

**LENDER:**

**SHOWFIELDS INVESTMENT LLC**

By: _____
Name:
Title:

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

EXHIBIT A

(Form of Borrowing Request)


DATE: [_____], 20[___]


Showfields Investment LLC
c/o White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036
Attn: Steven Coury, Esq.
Email: courys@whiteandwilliams.com


To Whom It May Concern:

        Reference is hereby made to the Senior Secured, Super-Priority Debtor-In-Possession Loan Agreement**,** dated as of October [___], 2023 (the "**Agreement**") between Showfields Inc., a Delaware corporation, as debtor and debtor-in-possession under the Bankruptcy Code ("**Showfields**") and Showfields NY 2 LLC, a New York limited liability company, a debtor and debtor-in-possession ("**SNY2 LLC**" and together with Showfields, collectively, the "**Borrowers**") and Showfields Investment LLC, a Delaware limited liability company ("**Lender**").  Capitalized terms used herein but not specifically defined herein shall have the meanings assigned to them in the Agreement.

        The undersigned hereby requests an Advance under the terms and conditions of the Agreement to be made as follows:

    1.   Aggregate principal amount of Advance: $[_____]

    2.   Date of Advance (which shall be a Business Day): [_____], 20[___]

    3.   Wire Transfer Instructions:

        Bank: [____]

        ABA No.: [_____]

        Account No.: [_____]

        Account Name: [_____]

11/03/2023 CONFIDENTIAL
DRAFT FOR DISCUSSION
PURPOSES ONLY

The undersigned hereby certifies that the conditions precedent set forth in the Agreement, as applicable, will be satisfied on the date of the requested Advance.


**SHOWFIELDS INC.**
**SHOWFIELDS NY 2 LLC**


By:_____
Name:
Title: