**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 23-43643 (JMM) |
| SHOWFIELDS, INC., *et. al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

### UNITED STATES TRUSTEE'S (I) MOTION FOR ORDER CONVERTING CHAPTER 11 CASES TO CHAPTER 7 CASES, AND (II) OBJECTION TO DEBTORS' MOTION TO DISMISS

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby respectfully submits this (i) motion (this "Motion to Convert"), pursuant to sections 1112(b) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), for entry of an order converting the above-captioned jointly-administered chapter 11, subchapter V, cases (the "Bankruptcy Cases") of Showfields, Inc. ("Showfields") and Showfields NY 2 LLC (the "Brooklyn Store" and together with Showfields, the "Debtors") to cases under chapter 7 of the Bankruptcy Code, and (ii) objection (this "Objection") to the Debtors' *Motion for Entry of An Order (I) Authorizing the Rejection of Certain Leases and Contracts, (II) Authorizing the Debtors to Consent to Showfields Investment LLC'S Acceptance of Collateral, (III) Allowing Administrative Expense Claims; (IV) Dismissing the Debtors' Chapter 11 Cases; and (V) Granting Related Relief* (ECF No. 93, the "Motion to Dismiss"), and in support of the Motion to Convert and Objection, respectfully represents as follows:

1

## PRELIMINARY STATEMENT

1.      The Debtors' alleged first-lien secured creditor, Showfields Investment LLC (the "Alleged Secured Creditor"), *was created two weeks before these cases were filed*, with the assistance of the Debtors' then counsel, as a vehicle for the Debtors' insiders and investors to obtain a last-minute secured claim to wield in these Bankruptcy Cases. The Debtors are now seeking authority to transfer all their assets to the Alleged Secured Creditor on account of $1 million of that alleged secured claim, and to dismiss these chapter 11 cases without making payments to any other creditors. The Debtors and the Alleged Secured Creditor have failed, however, throughout these chapter 11 cases, to adequately disclose: (i) the extent of their relationship, (ii) their overlapping representation by counsel, (iii) the nature of the creditor's claim, (iv) the timing of the creditor being granted a security interest in the Debtors' assets on account of antecedent debts, and (v) the timing of the creditor filings its UCC's. The United States Trustee believes that the Alleged Secured Creditor's liens are subject to avoidance under section 547 of the Bankruptcy Code, such that the value of the Debtors' estates should be available to all creditors.

2.      The United States Trustee further believes that the Debtors, as fiduciaries of their estates, should have moved to avoid the Alleged Secured Creditor's liens. At the very least, they should have disclosed information in their possession that would have made it readily apparent to creditors and the subchapter V trustee that a preference action is warranted. The Debtors' failure to disclose relevant information about the Alleged Secured Creditor's claim in their first day affidavit, cash collateral motion, debtor-in-possession financing motion and the Motion to Dismiss has tainted all aspects of this case and the relief that has been granted to date. This failure was compounded by the Alleged Secured Creditors' own failures to disclose information

in its proof of claim, which lacks nearly all documentation that should be filled in support of a secured claim, including a copy of the underlying note and security agreement (none was filed), evidence that funds were actually advanced to the Debtors and the dates of those advances (none was filed), calculations of any interest, fees, and penalties included in the claim amount (none was filed), and copies of all lien perfection documents (only one was filed).

3.     The United States Trustee agrees with the Debtors that cause has been shown under section 1112(b) of the Bankruptcy Code for conversion or dismissal of these Bankruptcy Cases, because the Debtors have substantial and continuing losses and no hope of reorganizing. But the Debtors' proposed dismissal is clearly not in the best interests of creditors or the estates, as it would only benefit a handful of insiders while the Debtors' numerous priority, administrative and general unsecured creditors who would receive nothing. A chapter 7 trustee is necessary to investigate the Debtors' pre-petition transactions, investigate potential fraudulent transfer and avoidance actions, liquidate the Debtor's assets for the highest possible amounts, and make distributions in accordance with the Bankruptcy Code's priority rules. These Bankruptcy Cases should be converted to chapter 7, not dismissed. The Motion to Convert should be granted, and the Debtors' Motion to Dismiss should be denied.

4.     In addition to dismissal, the Debtors are attempting to use their Motion to Dismiss as a vehicle for circumventing the Bankruptcy Code's evidentiary and procedural requirements for (i) sales of estate assets, (ii) allowance of professional fees, (iii) rejections of contracts, and (iv) distributions of funds. The Court should deny all the extraneous relief the Debtors are seeking to include in their proposed dismissal order, including:

5.     **Sale Without a Sale Motion**. The Debtors are asking the Court for authority to transfer all their assets, which they allege are worth less than $500,000, to the Alleged Secured

Creditor in exchange $1 million of its alleged first-lien secured claim. The Debtors make this request without filing a sale motion, a valuation of the estate assets, putting forth a marketing process, or extending an opportunity for competing bids. This proposed credit bid sale is not an arms-length transaction and utterly fails to meet the procedural and evidentiary requirements of section 363 of the Bankruptcy Code for sales of estate assets. Moreover, the Alleged Secured Creditor should not be permitted to credit bid its liens as they are subject to avoidance. The proposed transfer of the Debtors' assets to the Alleged Secured Creditor should be denied.

6.      **Allowance of Professional Fees Without A Fee Application**. The Debtors are asking the Court to grant their counsel a $62,000 allowed administrative claim, without Counsel filing a fee application and submitting time records. This request fails to meet the procedural and evidentiary requirements of section 330 of the Bankruptcy Code and should be denied.

7.      **Rejection of Contracts Without Opportunity to Filed Rejection Damages Claims.** The Debtors are asking the Court to permit them to reject the membership contracts of their subscribers without providing any information about the contracts they seek to reject, demonstrating that the contracts are executory, or providing the counterparties with an opportunity to file rejection damages claims. Among other defects, the Debtors have failed to file schedules of the legal names and address of their counterparties, the dates and remaining terms of contracts they seek to reject, the membership dues paid under the contracts, and the dates of those payments. The United States Trustee believes that, to the extent the counterparties became members and/or paid membership dues post-petition, they may be entitled to administrative claims on account of their rejection damages. Absent the Debtors submitting complete information about all contracts they are seeking to reject, and providing for payments of any administrative claims resulting from the proposed rejection, this relief should be denied.

8.      **Distributions Outside Plan in Violation of Priority Rules**. The Debtors are asking the Court for authority to make distributions on account of the administrative claims of counsel and the subchapter v trustee—but not make any distributions to similarly situated administrative creditors. In a chapter 11 case, the Bankruptcy Code requires that administrative creditors be paid in full under a plan of reorganization or liquidation.  In addition, the Bankruptcy Code's priority rules require that all creditors at the same priority level receive *pari passu* distributions. The Debtors allege—without any evidence—that, other than the Brooklyn Store's landlord who supposedly has agreed to waive its claim, they have no administrative creditor other than their counsel and the subchapter V trustee. In light of the Debtors' history of not paying their vendors and independent contractors, however, and the possibility that rejections of membership contacts will result in administrative claims, there likely are administrative creditors not been disclosed by the Debtors. The Court should not permit dismissal prior to an administrative bar date and assurance that all administrative creditors will be paid in full.

9.      Prior to the commencement of these cases, the Debtors received, on information and belief, nearly $30 million in investment money, SBA loans, debt financing, merchant cash advance loans, and membership dues. Nothstanding these extensive funds, the Debtors failed to pay their landlord and vendors. Numerous small businesses and independent contractors have suffered serious financial hardship as a result of not being paid by the Debtors. A chapter 7 trustee is necessary to investigate all the Debtors' pre-petition transactions and to ensure that whatever value remains is the Debtors' estate is maximized and distributed appropriately among its creditors.

# BACKGROUND[1]

## Alleged Secured Creditor's Claim[2]

10.     On information and belief, between 2018 and 2023, the Debtors raised more than $10 million from investors through the issuance of convertible notes (the "Convertible Notes").

11.     On information and belief, most of the Convertible Notes converted into shares of Showfields upon later funding rounds.

12.     On information and belief, when the Debtors determined they needed to file chapter 11 cases, in September of 2023, approximately $1.4 million in Convertible Notes remained outstanding.

13.     On information and belief, the holders of the outstanding Convertible Notes (the "Investors") included the Debtors' principals, Tal Nathanel and Amir Zwickel (the "Insiders").

14.     On information and belief, on September 14, 2023, the Insiders and Investors took steps to create the Alleged Secured Creditor by filing limited liability company articles of organization in Delaware.

15.     On information and belief, the Investors subsequently transferred their Convertible Notes to the Alleged Secured Creditor in exchange for its membership interests.

16.     On information and belief, two days before Showfields filed its chapter 11 case, the Debtors and the Alleged Secured Creditor entered into a note consolidation agreement (the

---

[1]     The United States Trustee respectfully requests that, in considering the Motion to Convert and Objection, the Court take judicial notice of docket of the Bankruptcy Case, the petition and any schedules, statements of financial affairs, operating reports and others financial disclosures filed or made by the Debtors in the Bankruptcy Cases, all pleadings filed in the Bankruptcy Case including exhibits thereto, the Alleged Secured Creditor's proof of claim, and the record of all hearings and meetings conducted in connection with the Bankruptcy Case.

[2]     The "Alleged Secured Creditor's Claim" and "Overlapping Representation by Counsel" subsections of the Background section are based upon recent telephone and email communications between counsel to the United States Trustee and counsel to Debtors and Alleged Secured Creditors, and documents recently provided to the United States Trustee; they are qualified as being on "information and belief" in all respects.

"Consolidation Note") under which, among other things, (i) the Insiders' and Investors' Convertible Notes were consolidated into a single note held by the Alleged Secured Creditor, and (ii) the Debtors granted the Alleged Secured Creditor security interests in their assets as collateral for the Consolidation Note.

17.     On information and belief, no new funds were advanced to the Debtors under the Consolidation Note.

18.     On information and belief, two hours before Showfields filed its chapter 11 case, the Alleged Secured Creditor filed UCCs against the Debtors in New York, Delaware, and Washington DC.

**Overlapping Representation by Counsel**

19.     On information and belief, prior to and leading up to the filing of these Bankruptcy Cases, the Debtors were represented by the firm of White and Williams LLP ("White & Williams"), who advised the Debtors on restructuring matters.

20.     On information and belief, White & Williams, while still acting as the Debtors' counsel, assisted the Insiders and Investors in establishing the Alleged Secured Creditor.

21.     On information and belief, White & Williams drafted the Consolidation Note.

22.     On information and belief, White & Williams assisted the Alleged Secured Creditor to file UCCs against the Debtors in New York, Delaware, and Washington DC.

23.     On information and belief, White & Williams has represented the Alleged Secured Creditor throughout these Bankruptcy Cases.

**Post-Petition**

24.     On October 6, 2023, Showfields filed its chapter 11 petition, schedules, and statement of financial affairs, on October 6, 2023. *See* ECF no. 1.

25. On October 6, 2023, Showfields filed its first day affidavit. *See* ECF no. 5 (the "First Day Affidavit"). The First Day Affidavit contains a section describing Showfields' outstanding loans, including an SBA loan, PIPE debt and MCA loans, but failed to disclose or explain the Alleged Secured Claim. *See* ECF no. 5.

26. On October 13, 2023 the Debtors filed a cash collateral motion. *See* ECF No. 21, (the "Cash Collateral Motion"). The Cash Collateral Motion explains the Debtors' debts to the SBA, Pipe and MCA and proposes replacement liens for those creditors. The Cash Collateral Motion fails to disclose, explain, or provide replacement liens for the Alleged Secured Creditor. *See* ECF no. 21.

27. On November 17, 2023, the Debtors filed a motion to obtain debtor-in-possessions financing from the Alleged Secured Creditor (ECF No. 64, the "DIP Financing Motion"). The Debtors sought an expedited hearing on the DIP Financing Motion, such that creditors and parties-in-interest had only three days to review the 8-page motion and 31-page DIP financing agreement and raise any objections. DIP financing motion described the Debtors agreement with the Alleged Secured Creditor as "a certain Amended, Restated and Consolidation Loan Agreement . . . which memorializes a loan extended to Borrowers and SDC1 in an amount up to $2,500,000.00." *See* ECF no. 64. The DIP Financing Motion failed to disclose, however, that the Consolidation Note was signed two-days prior to the petition date, that it was an agreement to consolidate previously existing convertible notes held by the Debtors' investors, that no new funds were extended to the Debtors under the Consolidation Note, and that the Consolidation Note was used by the Insiders and Investors to obtain liens on the Debtors' assets hours before these cases were filed. *See* ECF no. 64.

28. On December 18, 2023, the Alleged Secured Creditor filed a secured claim

against the Debtor in the amount of $1,473,781. Claim no. 33 (the "Proof of Claim"). The Proof of Claim does not include any supporting documents other than one UCC that was filed in New York.

## MOTION TO CONVERT

### I.    Legal Standards.

29.    Section 1112(b)(1) of the Bankruptcy Code provides that, on request of a party in interest, after notice and a hearing, and subject to certain limited exceptions, "the court shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). When considering a motion to covert or dismiss a chapter 11 case, a court must first determine if "cause" exits for conversion or dismissal. Section 1112(b)(4) of the Bankruptcy Code provides a list of sixteen circumstances that each constitute "cause" for converting or dismissing a chapter 11 case. *See* 11 U.S.C. § 1112(b)(4). This "list is illustrative, not exhaustive." *C-TC 9th Avenue Partnership v. Norton Co. (In re C-TC 9th Avenue Partnership)*, 113 F.3d 1304, 1311 (2d Cir. 1997). "Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under § 1112(b)." *In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009). The movant bears the burden of demonstrating, by a preponderance of the evidence, that such cause exists. *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011); *Taub v. Taub (In re Taub),* 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010).

30.    If a court finds the existence of "cause" for converting or dismissing a chapter 11 case, the court must then determine whether conversion of dismissal is in the best interests of creditors and the estate and then enter an order converting or dismissing the case. *See* 11 U.S.C. § 1112(b)(1). Conversion or dismissal is mandatory unless the Court determines that one of the

two limited exceptions apply. Under section 1112(b)(1) of the Bankruptcy Code, the court may appoint a chapter 11 trustee or examiner instead of converting or dismissing a case if the court determines that such interest is the best interests of creditors and the estate. *See* 11 U.S.C. § 1112(b)(1). Under section 1112(b)(2), notwithstanding a finding of "cause" for conversion or dismissal, the court may not convert or dismiss if it also finds "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" __**and**__ the debtor or any other party in interest establishes that (A) a plan will be confirmed within the timeframes established by the bankruptcy code or within a reasonable period of time; and (B) the "cause" for conversion or dismissal includes an act or omission of the debtor (i) for which there exists a reasonable justification and (ii) that will be cured within a reasonable period of time fixed by the court. 11 U.S.C. § 1112(b)(2).

**II.        Cause Exists for Conversion of these Bankruptcy Cases.**

31.        The United States Trustee agrees with the Debtors that there is cause for converting or dismissing these Bankruptcy Cases to cases under chapter 7.

32.        <u>Continuing Losses and No Likelihood of Rehabilitation</u>. Under section 1112(b)(4)(A) of the Bankruptcy Code, a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" constitutes "cause" for conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(A). A party seeking to demonstrate cause under § 1112(b)(4)(A) must establish both the 'substantial or continuing loss' prong as well as the 'absence of a reasonable likelihood of rehabilitation.'" *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y 2009). With respect to the first prong, there need not be significant diminution to satisfy section 1112(b)(4)(A). *See In re East Coast Airways, Ltd.*, 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992); *In re Kanterman*, 88 B.R. 26,

29 (S.D.N.Y. 1988). An estate's liability for administrative expenses constitutes a diminution in assets. *In re Lyons Transportation Lines, Inc.*, 123 B.R. 526, 531 (Bankr. W.D. Pa. 1991). With respect to the second prong, the test is not "of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009). A debtor's failure to effectuate a plan in due time can constitute cause for dismissal. *See In re Bronx Miracle Gospel Tabernacle Word of Faith Ministries*, 2018 Bankr. LEXIS 1534 at *5-6 (Bankr. S.D.N.Y. May 23, 2018) ("If the debtor or some other party in interest is unable or unwilling to put together a convincing business plan within a reasonable amount of time and can offer neither a valid justification for the failure to do so nor a reasonable prospect of being able to accomplish the task in the near future, there is often little reason to proceed with the reorganization.")

33.     Here, the Debtors admit in their Motion to Dismiss that they have substantial and continuing losses and are unable to confirm a plan of reorganization. The United States Trustee respectfully submits that Debtors' substantial and continuing losses, failure to pay post-petition obligations as they come due, and complete inability to reorganize constitute cause for conversion of these Bankruptcy Cases to chapter 7.

34.     <u>Gross Mismanagement</u>. Under section 1112(b)(4)(F) of the Bankruptcy Code, a "gross mismanagement" constitutes "cause" for conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(F); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M. D. Pa. 2007) (failure to maintain effective corporate management team constituted gross mismanagement and is cause to dismiss chapter 11 case); *In re Products International Company*, 395 B.R. 101, 111 (Bankr. D. Arizona 2008) (gross mismanagement is cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(B)); *In re Tucker*, 411 B.R. 530, 533

(Bankr. S.D. Georgia 2009) (standing alone, gross mismanagement is sufficient cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(B)).  As a debtor-in-possession of its estate, the Debtor owes a fiduciary duty to its creditors and is obligated to follow the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  *In re Wallace,* 2010 WL 378351 at *4 (Bankr. D. Idaho, January 26, 2010); *see e.g.* 11 U.S.C. §§ 1106 and 1107 and Fed R. Bankr. P. 2015 (delineating the duties of chapter 11 debtors in possession).

35.    Here, the Debtors, as a trustee for their estates, has breached their fiduciary duties by failing to pursue avoidance actions against the Alleged Secured Creditor, and failing to disclose information in their possession that was necessary for the Court, creditors and subchapter V trustee to fairly assess these cases and the Debtors' motions. In addition, notwithstanding the budgets agreed to by the Debtors in connection with the Cash Collateral Order and Interim DIP Financing Order, the Debtors have spent cash collateral and DIP financing funds without paying their landlord. The United States Trustee respectfully submits that these actions and inactions constitute gross mismanagement of the estate and are cause for conversion of these Bankruptcy Cases.

**III.    Conversion is in the Best Interests of Estate and Creditors.**

36.    The United States Trustee respectfully submits that conversion of these cases to a chapter 7 cases is in the best interest of creditors. Prior to entering bankruptcy, on information and belief, the Debtors received nearly $30 million from investors, lenders and members, but they entered bankruptcy millions of dollars in debt with little remaining cash.  The Debtors allegedly spent millions of dollars developing intellectual property, but they now allege—for purposes of transferring it to their insiders—that it is worth less than $500,000. A chapter 7 trustee should be appointed to: investigate if any of the debtors' funds were improperly diverted,

investigate and pursue avoidance actions (including potential avoidance of the Alleged Secured

Creditors Claim), sell the Debtors' assets for the highest possible price, and make distributions to

creditors in accordance with the Bankruptcy Code's priority rules. Accordingly, the United

States Trustee respectfully requests that these Bankruptcy Cases be converted to chapter 7 cases.

## OBJECTION TO MOTION TO DISMISS

37.     Under the Motion to Dismiss, the Debtors are asking this Court to enter a

"structured dismissal" order that would, among other things, authorize the Debtors to transfer all

their assets to the Alleged Secured Creditor without a sale motion, allow attorney fees without a

fee application, authorize chapter 11 disbursements outside of a confirmed plan in violation of

the Bankruptcy Code's priority rules. The Debtors have not not met the procedures or

evidentiary requirements for such relief, and it should be denied.

**I.       Proposed Dismissal Is Not in the Best Interests of Creditors and Should Be Denied.**

38.     Under the Debtors' proposed dismissal order, all the value of the Debtors' estates

would be transferred to the Alleged Secured Creditor—an insider creditor whose liens are likely

subject to avoidance—and all other pre- and post-petition creditors, including priority,

administrative (other than the Debtors' counsel and subchapter V trustee), and general unsecured

creditors, would recover nothing. This path forward clearly is not in the best interest of creditors

and the estates. Even if a chapter 7 case ultimately fails to result in distributions to creditors, the

possibility of recoveries under a chapter 7 case is more beneficial to creditors and the estates than

the certainty of no recoveries under the Debtors' proposed dismissal order. The Debtors have

failed to demonstrate that dismissal is in the best interests of creditors and the estate; dismissal

should be denied.

**II.      Court Should Not Authorize Credit-Bid Sale Without a Sale Motion.**

39.     Section 363(b)(1) provides that, after notice and a hearing, a debtor-in-possession

"may use, sell or lease, other than in the ordinary course of business, property of the estate."  11

U.S.C. § 363(b)(1).  For a court to approve an application under Section 363(b), it must

"expressly find from the evidence presented before [it] at the hearing a good business reason to

grant such application."  *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722

F.2d 1063, 1071 (2d Cir. 1983) (requiring a proper business justification for Section 363

approval).  In evaluating such evidence, the Second Circuit instructed that a court should

consider "relevant factors as the proportionate value of the asset to the estate as a whole . . . the

proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of

the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps,

whether the asset is increasing or decreasing in value." *Id.* In addition to demonstrating a sound

business justification for a proposed sale, a debtor must demonstrate that (i) it has provided the

interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable,

and (iii) the purchaser is proceeding in good faith. *See Polvay v. B.O. Acquisitions, Inc. (In re*

*Betty Owens Sch.)*, 1997 WL188127, *4 (S.D.N.Y. Apr. 17, 1997).

40.     Under the Motion to Dismiss, the Debtors are seeking authority to "to consent to"

the alleged Secured Creditors "acceptance" of all the Debtors' assets in partial satisfaction of the

Alleged Secured Creditor's claims. The Debtors fail to cite any authority for the court to approve

this procedure for the disposition of estate assets. The Motion alleges, without any evidence, that

the assets are worth "less than $500,000." Those assets include intellectual property that, on

information and belief, the Debtors have spent of millions of dollars developing. The Debtors

have not filed a sale motion under section 363 of the bankruptcy code, provided an appraisal or

other valuation of the assets, marketed the assets, and are not proposing to conduct a credit-bid

sale of the assets subject to higher and better offers. Moreover, the Alleged Secured Creditor is

an insider, and its liens are likely subject to avoidance. The Court should deny the Debtors'

request to turnover their assets to the Alleged Secured Creditor.

**III.    Court Should Not Allow Professional Fees Without a Fee Application.**

41.     Section 330(a)(1) of the Bankruptcy Code provides that, after notice to parties in

interest and the United Stated Trustee and a hearing, a bankruptcy court may award "reasonable

compensation for actual, necessary services rendered by the trustee, examiner, ombudsman,

professional person, or attorney and by any paraprofessional person employed by any such

person; and …reimbursement of actual, necessary expenses." See 11 U.S.C. §330(a)(1). Courts

in the Second Circuit employ the "lodestar approach" for calculating judicial awards of

compensation to attorneys, which involves multiplying the hours spent on a case, based on

attorney time records, by a reasonable hourly rate of compensation for each attorney based on

those normally charged for similar work by attorneys of comparable skill and experience. *See*

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany*, 522 F.3d 182, 186 (2d Cir.

2007); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999); *Detroit v. Grinnell Corp.*,

560 F.2d 1093, 1098 (2d Cir. 1977).

42.     Here, counsel to the Debtors has not filed a fee application, an explanation of the

services performed, time records, or a supporting affidavit. Nonetheless, counsel to the Debtors

is asking the Court to grant it an allowed administrative claim in the amount of $62,000.  The

Debtors and their counsel do not cite any authority for the Court to approve tens of thousands of

dollars in attorney's fees without a fee application. The Court should deny the Debtors' request

to approve attorney fees without a fee application.

**IV.    Court Should Not Authorize Rejection of Contracts Without an Opportunity For
Counterparties to File Rejection Damages Claims.**

43.     The Debtors are asking the Court to permit them to reject the membership

contracts of their subscribers—but have failed to provide the counterparties with an opportunity

to file rejection damages claims. Moreover, the Debtors have failed to provide any information

about the contracts that they seek to reject, including the legal names and address of the

counterparties, the dates and remaining terms of contracts, and the membership dues paid under

the contracts and the dates of those payments. The Debtors have also failed to demonstrate that

the contracts are "executory." The United States Trustee believes that, to the extent the

counterparties became members and/or paid membership dues post-petition they may be entitled

to administrative claims. Any such administrative claims should to be paid *pari passu* with the

administrative claims the debtors are seeking authority to pay. Absent the Debtors providing (i)

further information about the membership contacts they seek to reject, (ii) a rejection damages

claims bar date, (iii) and *pari passu* payments of any rejection damages that are allowed as

administrative claims, this requested relief with respect to the membership contracts should be

denied.

**V.      Court Should Not Authorize Distributions Outside a Plan In Violation of Priority Rules.**

44.      In its 2017 decision in *Czyzewski v. Jevic Holdings Corp.*, the United States

Supreme Court reversed approval of structured dismissal of a chapter 11 case and held that a

"distribution scheme ordered in connection with the dismissal of a Chapter 11 case cannot,

without the consent of the affected parties, deviate from the basic priority rules that apply under

the primary mechanisms the Code establishes for final distributions of estate value in business

bankruptcies." 137 S.Ct. 973 (2017).  In holding that structured dismissals that violate the

distribution priority rules are impermissible, the Supreme Court's decision in Jevic did not

approve "structured dismissals" as an alternative to a chapter 11 plan confirmation or chapter 7

liquidation.  Rather, it left unresolved whether structured dismissals that do not violate priority

are permissible. *See Jevic*, 137 S. Ct. at 985 ("We express no view about the legality of structured dismissals in general."). The Bankruptcy Code's basic priority rules require that all creditors at the same priority level be paid the same percentages of their claim. It also requires that, in a chapter 11 case, all administrative claims be paid in full under a plan of reorganization or liquidation.

45.     The Bankruptcy Code's priority rules require that all creditors at the same priority level receive *pari passu* distributions. In addition, in a chapter 11 case, the Bankruptcy Code requires that administrative creditors be paid in full under a plan of reorganization or liquidation. The Bankruptcy Court should not enter a dismissal motion that would enable the Debtors to obtain relief in a chapter 11 case they would be unable to obtain under a plan; specifically, the Court should not approve a structured dismissal that pays some creditors in full while paying nothing to other creditors at the same priority level, or that fails to pay all administrative creditors in full.

46.     Here, the Debtors attempt to justify their proposed structured dismissal distributions—under which no other administrative creditors would be paid—by alleging without evidence that there are no other administrative creditors. The Debtors, however, have a history of not paying their landlords, vendors and independent contractors. the Court should not accept the Debtors naked assertion that there are no other administrative creditors. Moreover, there is a possibility that the rejection of membership contacts will result in administrative claims. In the absence of an administrative bar date and confirmed plan, the Court should not authorize final distribution to a subset of creditors where there will be not funds remaining to pay similarly situated creditors.

## NO PRIOR REQUEST

47.     No prior motion for the relief requested herein has been submitted to this or any

other court.

WHEREFORE, the United States Trustee respectfully requests that the Court enter an

order, substantially in the form annexed hereto as <u>Exhibit A</u>, (i) converting these chapter 11 cases

to chapter 7 cases, (ii) denying the Motion to Dismiss in all respects, and (iii) granting such other

and further relief as is just.


Dated:   New York, NY
         February 12, 2024

**WILLIAM K HARRINGTON**
**UNITED STATES TRUSTEE, REGION 2**

By:   <u>/s/ Jeremy S. Sussman</u>
      Jeremy S. Sussman, Trial Attorney
      Office of the United States Trustee
      Region 2– Brooklyn Division
      Alexander Hamilton Custom House
      One Bowling Green, Room 510
      New York, NY 10004-1408
      E-mail: Jeremy.S.Sussman@usdoj.gov

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 23-43643 (JMM) |
| SHOWFIELDS, INC., *et. al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

### ORDER (I) GRANTING UNITED STATES TRUSTEE'S MOTION TO CONVERT CHAPTER 11 (SUBCHAPTER V) CASE TO CHAPTER 7 CASE, AND (II) DENYING DEBTOR'S MOTION TO DISMISS

Upon the motion (ECF no. __ the "Motion to Convert") of William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), pursuant to sections 1112(b) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), for entry of an order converting the chapter 11 (subchapter V) case (the "Bankruptcy Case") of the above-captioned debtors (the "Debtors") and objection ("Objection") to the Debtor's motion to dismiss the Bankruptcy Case (ECF no. 93, the "Motion to Dismiss"); and the Court having found that appropriate notice of the Motion to Convert was given and no other or further notice was required under the circumstances; and the Court having conducted a hearing on the Motion to Covert, and the Motion to Dismiss; and objections to the relief sought in the Motion to Covert, in any, having been overruled or withdrawn at the hearing; and the Court having found that cause exits for converting the Bankruptcy Case to a case under chapter 7; and the Court having found that conversion of the Bankruptcy Case is in the best interests of creditors and the estate; now therefore it is hereby

ORDERED that the Bankruptcy Cases are converted to cases under chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b); and it is further

ORDERED that the Motion to Dismiss is denied; and it is further

ORDERED that the United States Trustee is directed to appoint a chapter 7 trustee for the Bankruptcy Cases.